May it please the court. My name is Joseph Bowie. I represent Victor Luis Angeles Zamorano. I'd like to reserve three minutes of time for rebuttal if that's okay. We'll try to help you but keep your eye on the clock if you will. Will do, thank you. The stakes in immigration cases are extraordinarily high. This case is no different. My client followed his parents, I'm sorry, into the United States when he was a child. He's lived here ever since. Every relationship in his life is at risk. Aware of the stakes involved and the government's refusal to provide counsel in these cases, courts have interpreted the due process clause in immigration cases very broadly. Can I raise a question? I had a particular question about the U-Visa argument. So the BIA didn't address Mr. Zamorano's claim that the IJ already might advise Zamorano of his eligibility for a U-Visa. But the government says any such error is harmless because there's no prejudice. What was the prejudice to him? He did not identify how he was eligible for a U-Visa and so far as we know he still hasn't applied for a U-Visa. So could you address that? Sure, so I think a couple of points. First, I maintain that there's no harmless error exception that applies when the BIA just hasn't addressed an argument. No published authority says that would basically override the rule that the BIA is supposed to consider complicated issues first. Is there any case saying that our typical harmless error rule doesn't apply in this context? I mean there's like a Supreme Court case I cite in the reply brief that suggests that to the extent there's a harmless error exception it only exists if the argument is frivolous on its face. And I don't think that this is this case and I think that leads to the second question. So my client told the immigration judge that his mother is a domestic violence victim, that she is on her way to receiving a U-Visa exactly on that basis. The literature bears out that a lot of children of parents who suffer from domestic violence suffer that too. That should raise an inference of his apparent eligibility for that But with respect Mr. Bowie, following up on Judge Ikuda's question, you may say there's no harmless error but what do you do with the concept that the IJ has no authority whatsoever to award U-Visa or DACA eligibility? So in what way could your client be harmed even if we take it as a given that the IJ didn't treat them? If the IJ has no authority to do anything about it, how in was your client harmed? So my client was harmed because when the immigration judge number one doesn't even tell him about this relief for which he is apparently eligible, he's not able to for instance ask to continue the hearing so that he can apply. That's what this court held in CJLG in regards to I want to say SJS release, something like that, where the court says well I mean sure the immigration judge didn't have authority to grant this relief but it changes the outcome of the case in that he could have asked for a continuance applied and since he wasn't able to apply now he has a removal order against him. But we get cases all the time as I'm sure you know where people say well the judge didn't continue the case but there have been two or three or four or five previous continuances and you never know when you're going to get a UVC, not even his UVC, his mother's. So in this case were there any previous continuances? I mean I think there might have been a few just to see if he could get time to seek your counsel. So basically what your client wanted he got. He just didn't get another one. Well the problem is that at no point was he ever advised of his apparent eligibility for this relief. The problem isn't the existence of a continuance. I just wanted to ask about the apparent eligibility. So he said his mother was eligible but for a UVC, isn't there the element of having to offer assistance to law enforcement? Did he indicate that? Is there any indication? Is there any indication now? Sure I mean so the requirement is that you either have actually provided assistance to law enforcement in the investigation or in the prosecution or that you're likely to do those things. So I submit that just by virtue of, in all likelihood, being a witness to his mother's domestic violence situation and probably being a victim himself, as he says in the VA appeal, that should be enough to satisfy that concern. I'd also add that in Bowie, what the court says in terms of you know these theoretical pitfalls that might destroy a claim is that the court just doesn't consider that when the immigration judge himself didn't consider it. So his apparent eligibility in your view, if a person says that their relative is eligible for or is applying for a U visa, then they have apparent eligibility for a U visa. Is that the rule that you think is applicable here? I think the rule that's applicable is that when you're talking about a mother and a son, you can make that inference. I mean how about a sister? I'm sorry? Well how about a sister or a father or other relative? You know the apparent eligibility standard is pretty case specific, so I'm hesitant to put out any... If the mother lives in a different state, is it still the rule? Maybe not in that situation, but there's nothing in the record to suggest that's the case and that's the immigration judge's fault. My client shouldn't be faulted for that. So there aren't any other questions. I guess I'll just move on. Let me let me ask you this before you finish there. Was there any proffer made by your client about the apparent eligibility for the U visa? Or he just said that I think I'm going to get a U visa by virtue of my mother who was domestically abused. Is that all that was said? So what he says is that his mother is the domestic violence victim, that she's on her way to getting a U visa. And with respect, anybody can say that. Did he make a proffer that would indicate there was any realistic likelihood of that? Well he couldn't because we're in a situation where the immigration judge didn't even tell him that this relief might apply to him. And the case law is pretty clear on this. When we're talking about a failure to Well, he apparently knew it because he raised it, right? Well, he raised it as to his mother. I don't think that meant that he... That's all we're talking about here, isn't it? It was his mother. Is there anybody else he's claiming was going to get a U visa that would be helpful to him? Well, I mean, he talks about in his appeal to the VA that he's in fact the domestic violence victim. So it's not just his mother. It's the fact that his mother's status implies his own status. Do you want to save the rest of your time then for rebuttal? Yes, please. Thank you. Very well. Okay, Mr. Oliveria. How do you say it? Oliveria? Oliveria. Excuse me. May it please the court. My name is Andrew Oliveria on behalf of the respondent, Merrick Garland. Just to address your honor's questions about the U visa, as we cited in our brief, there is no prejudice here because as this court stated in the Stellante Telus, he can simply apply for, if he believes that he is directly eligible for a U visa, he can apply and pursue his proceedings before USCIS. So therefore, there is no prejudice here. And the immigration judge was not presented with apparent eligibility. Such that he would have to indefinitely can continue proceedings while he sought a U visa. Turning to the question of asylum, as this court held in Valencia, there is no blanket right to asylum. As a regulation state, the applicant must or the alien must express a fear of persecution or harm. The immigration judge explicitly questioned Angela Zamorano about a fear of returning to Mexico. Angela Zamorano did not express a fear of persecution or harm even when the immigration judge specifically asked him about that and gave him an open-ended ability to address his concerns. Counselor, can I switch a little bit? I think that part of the case is pretty straightforward, but I'm concerned about the fact that the IJ didn't mention any positive factors weighing in favor of voluntary departure. Under Campos-Granville, are we required to remand for that aspect to be considered? Well, the immigration judge did. What he discussed was the fact that the seriousness of the DUI offenses and the third disorderly conduct offense were very severe. I mean, the DUIs involved property damage, assaulting a police officer. That was so significant that it outweighed the explanations and the other evidence that Angela Zamorano put forward. So are you saying that because of the DUI and other offense that the petitioner would not have been eligible for voluntary departure? This was not an issue of good moral character or statutory eligibility. This was purely discretionary, and the immigration judge decided that as a matter of discretion, his three arrests and convictions, given that they were all of a very similar nature, were just so negative that they outweighed anything else that he presented. So are you saying that there's somewhere in the record that the IJ said, I'm not going to talk to you about voluntary departure because your DUIs and what you did at that time were so serious, in my discretion, I'm not going to do it? No, the immigration judge did not preclude him from requesting voluntary departure. As we noted, this was not the case that's cited by Angela Zamorano, where the immigration judge flatly said, well, you have a criminal record, I'm not considering it. The immigration judge talked to him, learned the nature and the specifics of his convictions, and then weighed the evidence in the record and determined that as a matter of discretion, that Angela Zamorano didn't merit it. And because we're to our point that there is no jurisdiction to review that. So as far as you're concerned, notwithstanding Campos-Granville, our court has no jurisdiction to even question the legitimacy of the IJ's failure to follow up regarding voluntary departure? Well, we believe that the immigration judge did have, he didn't blanket deny voluntary departure. They did have a discussion of his apparent eligibility for voluntary departure and the immigration judge decided as a matter of discretion. He didn't preclude Angela Zamorano from presenting evidence. Angela Zamorano had multiple opportunities to discuss the nature of his convictions. And when he attempted to mitigate and he has discussed his fiance, his mother, and the immigration judge, as a matter of discretion, denied the application. He did not. From your perspective, he did talk about the, if you will, the positives and why he would be eligible for voluntary departure. While he did not explicitly lay out each of the positive things, the immigration judge does say that the convictions are so serious that they outweigh what you've said. Are you saying he didn't say anything and you say they were so serious that it outweighs what he said? What did he say about this? The immigration judge did not explicitly lay out the various positive factors, but he did not ignore them because he said that the negative criminal record outweighed the other evidence. Where is that in the record, please? I don't have the exact site. It would be about, let's say, page 67 or 68. But doesn't Compos Granillo indicate that the IJ has to expressly address the positive equities on the record? Well, the immigration judge is not free to ignore, but they're not also required to lay out and address every single specific piece of evidence. It is enough that this court can tell that this immigration judge considered the evidence presented. And how can we do that since he doesn't list or speak about or weigh any of the positive equities? Well, partly that's because Angelo Zamorano did not give many positive equities. Again, he was just simply trying to mitigate the seriousness of his convictions, and the address that. And the immigration judge is allowed to weigh the seriousness of that conviction in the exercise of his discretion. And so, as a final point on this, how do you distinguish Compos Granillo? That seems to suggest that we need to send this back to the IJ to consider thoroughly the voluntary departure issue and to allow the petitioner an opportunity to present his, if you will, good points regarding his mother and why he should be eligible for that. Well, I would say two things. One, the Hussain case that we submitted in 2008 says that immigration judges aren't sherpas. It's not immigration judge's responsibility to lead an applicant to list out every good possible quality. It's on him, the applicant, to raise those when he's been given the opportunity. And the immigration judge does acknowledge what's before him and weighs as a matter of discretion. And that is sufficient. And you think that answer is the Compos Granillo question? Yes. Okay. Does he actually use the word weigh? Weigh the favorable and negative? Because I didn't see that in the record. He doesn't use the word weigh, but he says that he's considered the evidence before him. If there are no further questions, we ask that this Court deny the petition for review. Any other questions by my colleague? All right. Thank you, Mr. Oliveira. Mr. Bowie, you have a little time here, probably two minutes and five seconds. Please proceed. Your microphone is muted. It's still on. There you go. There you go. Great. I just want to make a few points. I'm just going to do it as quickly as I can in my time constraints. So on asylum, one thing I wanted to emphasize is this is a case where the immigration judge actively discouraged my client from applying. Kendall Moreda and Lendis Castro are not allowed to do that. You're essentially moving from being a neutral faculty. He discouraged him from applying for what? The voluntary departure? For asylum. For asylum. Got it. Okay. You're not allowed to do that. You're moving from neutral fact finder to advocate for the government. I guess I don't understand that. He asked Mr. Zamorano whether he had any fear or what was his fear of returning to Mexico. And Mr. Zamorano said, well, I'm afraid of starting a new life. And he probed him several times to ask. And without any fear of returning to Mexico, other than the difficulty of starting a new life, there's no eligibility. So unlike Kendall Moreda, where he had a pending asylum application, and then the IJ said, you're not going to get asylum. I don't see how that applies here. Well, I mean, the problem of actively discouraging immigrants from pursuing relief, such as applying for asylum, is that you're essentially adjudicating a claim before giving them all the rights that come with an adjudication. That includes applying, and that includes presenting evidence in support of your claim, not just answering a few questions that really don't get to the heart of the issue. Do you fear persecution or harm? That was never asked. He just kind of alludes to it by asking, well, what generally do you fear? An immigrant who doesn't have counsel isn't going to know enough to answer the question. But with respect, counsel, didn't your client several times answer he didn't fear anything about going back, except it was a new life, basically. Well, that fear just can't be separated from the fear of harm or persecution. It's explained in his appeal to the BIA. His fear of harm or persecution is based on the fact that he's Americanized and will be persecuted. Your time is up now. Let me ask my colleague whether either has additional questions for Mr. Bowie. All right. Thanks to both counsel for your argument in this case. We realize that every good lawyer wants as much time as you can get, but we have a limited time in these arguments, and your argument's helpful. Case of Zamorano v. Garland is submitted. We thank you both. Thank you.
judges: M. Smith, Ikuta, Vratil